You may begin whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is Andrew Barr. I represent the appellant, Piaggio America. I'd like to reserve four minutes for rebuttal. I'm going to do my best to keep track of my time. Did you get a trip to Milan out of this? I'm sorry? Did you get a trip to Milan out of this? I'm still working on that. Okay. Thanks. Your Honors, there's three issues briefed. There's two that relate to jurisdiction, one that relates to arbitration. I'm happy to address them in any way that the Court would like, but I'll start with jurisdiction as an order of operation sort of suggests that makes sense. This is an interlocutory appeal, correct? That is correct, yes, Your Honor. Could you speak a little louder or raise the microphone up a little bit more? Let's give that a try. How's this? Better, thank you. So within jurisdiction, you're right, Judge Hawkins, this is an interlocutory appeal. There's no question we have the right to be in court under the Arbitration Act. The question is whether or not personal jurisdiction should be appealed at this time. Under this Court's It can be appealed. It certainly can be. It's just a matter of discretion if the Court would like to raise it now or leave it for later. Under this Court's precedent, both the Hendricks and the Puente, Arizona case, this Court makes very clear that Rule 12 defenses, if they're properly raised, can be addressed by the Court. So there's no question plaintiffs have not suggested that this Court cannot address the issue. It becomes more a matter of prudence. Doesn't our jurisprudence require that, applied to this case, that the arbitration issues and personal jurisdiction issues be inextricably intertwined? That's one way to do it, Judge Hawkins. The second way is if the jurisdiction is necessary to ensure meaningful review of the Arbitration Act. And the District Court, in its motion to stay, actually found that the two issues were, or the jurisdictional question was necessary to ensure meaningful review of the arbitration issue. That's Supplemental Excerpt of Record 1. So, you know, the Hendricks case does make it very clear that it's necessary to ensure meaningful review is authorized by the Supreme Court under Swint. This Court has exercised it in the injunction context, the class action context, the summary judgment context, in the immunity context. And a lot of it comes down to the policy behind it. And I know policy arguments are disfavored at times, but the policy behind immunity, the policy behind an injunction, if you want to review the jurisdiction at the same time, it goes to the authority of the District Court to bind the parties. And that's exactly what we're talking about here. Piaggio, as far as it believed, was part of an arbitration agreement with the plaintiffs. Yes, this was a back-to-back transaction. Yes, there's an intermediary broker. But Piaggio believed that an arbitration agreement and all the things that go with an arbitration agreement, the costs, the efficiencies, the expedited proceeding, et cetera. So if you look at this Court's case in Thomas, it's an immunity case, but they say the reason we want to exercise penitent jurisdiction to review the personal jurisdiction issue is because all of the benefits of immunity go away if we force these parties to go through the discovery, go through trial just to find out that personal jurisdiction was lacking. That exact same policy is imminently clear here. Arbitration is going to be faster. We would likely be finished with this dispute had this just started in arbitration. And that's what Piaggio bargained for when they started this whole thing. Plaintiffs came to Florida looking for Piaggio to buy a Piaggio aircraft. Now they don't want to go to Florida to resolve their disputes with Piaggio. It's a little unclear why, but either way Piaggio believed and the contract provides for an arbitration agreement. If there isn't jurisdiction in Idaho, which in our opinion is quite clear there isn't, then it's exceedingly unfair to Piaggio to force them to go through all the bells and whistles of civil discovery, the trial, and then come back up where both parties are going to copy and paste their briefs that they've already submitted to the court regarding personal jurisdiction. We've gone through jurisdictional discovery. There's no notice issues. Plaintiffs were fairly apprised that this was going to come up. So if it comes back down, this court's decision in a case called Lovell, which deals with summary judgment, the court resolved the personal jurisdiction issues using penitent jurisdiction right away purely because of efficiency. So the plaintiffs spent a lot of time talking about how injunctions are somehow different than any other issue. I would suggest that any time that the court has a properly raised appeal and there's another issue that could be case dispositive and could be better both for the court's efficiency as well as the party's efficiency, it makes sense to use the penitent jurisdiction. And again, plaintiffs have not suggested you can't. It's just a matter of prudence. Getting on to the personal jurisdiction aspects, the district court and the plaintiffs focus on three things. They say, you know, Piaggio knew that this plane was going to be hangered in Idaho. They say they know that the actual end user technically is a trust that's from Idaho. And then there's this idea of these flight coordination that Piaggio allegedly assisted in. I'd like to address each of those briefly. In terms of Paragon, the second plaintiff being an Idaho trust, they came into the picture the day before Piaggio delivered the aircraft through a unilateral third-party assignment that Piaggio had nothing to do with. I think the Supreme Court precedent talking about unilateral decisions of a plaintiff make it quite clear that this assignment is irrelevant in terms of jurisdictional analysis. Speaking to the second part, the fact that Piaggio allegedly had this flight coordination, to the extent that was jurisdictionally relevant or in the gray area before the Bristol-Myers case. In 2017, the Supreme Court made it eminently clear that you can't have these non-suit-related alleged contacts in the jurisdictional analysis. So in Bristol-Myers, you have the drug at issue being researched, developed, and distributed out of California, which was the forum state. The Supreme Court said jurisdiction was lacking for all of the non-residents because the actual basis of their suit, taking this drug, being harmed by this drug, had nothing to do with the research development distribution. Counsel, just on the off chance that we don't choose to reach this issue, do you want to talk about the third-party beneficiary question of arbitrability in Idaho under Idaho law? Yes, Judge Graber. So if we speak to the arbitration issue, I think there's two big-picture ways to look at it. You have the formalism and the lack of formalism. And a different way of thinking about that is if Idaho law applies, which the district court did no analysis. The district court threw it in a footnote saying that Idaho law applies. We argued for Florida law and our motion to dismiss. We still think Florida law applies. The district court disagreed after doing a jurisdictional analysis and came to the terms that Idaho would apply. Can you distinguish the Picorni case? Which case, I'm sorry? Picorni v. Quickstar, where an arbitration agreement had a choice of law clause, but this court looked to the forum state's law to determine whether the clause applied and how. So I find your position sort of interesting and potentially meritorious, but it seems to go against at least one of our precedents to look to Florida law in this question. Your Honor, if we ignore the choice of law aspect and just apply Idaho law, I think the plaintiffs find themselves in an exceedingly awkward position for two reasons. And this does speak to your question. First, they came in suing both the broker and us because this is a back-to-back transaction. The broker has been dismissed in favor of arbitration and is either pending or told or something. But this case, as far as the broker is concerned, will be resolved under Florida law. It will. That's what the district court held. Right, for the substance of it, because the parties did agree that Florida law would govern. How would Florida law treat the question of whether a third-party beneficiary counts as a party for purposes of arbitration? That is, in Florida, can you force a non-party to arbitrate? Yes, Judge. Even after Mendez? Yes. As we put forth in our reply brief, we tried to avoid the choice of law discussion because it seemed like something that the district court would do in the first instance. But as we put in our reply brief, Florida law does not believe in this sort of legal falsity of a party versus a non-party in terms of signatory status. They look to the real aspect of the transaction and say, everybody knew who the parties of interest here are. If you're a third-party beneficiary and you want to invoke the terms of the contract and benefit thereunder, you also have to take the burdens. And frankly, Idaho law has the same rule. It just doesn't for this very specific idea for party. If you look at the Bantz case, Bantz v. Vanguard, it's a similar situation. Admittedly, not an arbitration clause. It's a consent to settle clause. But the Idaho Supreme Court says you can't have a third-party beneficiary invoking the terms of a contract unless they want to be burdened by the terms of the contract. The Idaho Supreme Court says that would be manifestly unfair. And that makes sense. I mean, when I started talking about arbitration, I said this comes down to an issue of formalism. If we want to play the game of saying who's a party and who isn't, plaintiffs have no right to move under any term of this contract, any of the terms of conditions or any of the warranty provisions, because they all say Piaggio and, quote, buyer. Buyer is defined as the broker. Charlie Bravo Aviation. So if we're going to be serious here and look at Lewis and say Lewis applies to this contract, then all these contract and warranty claims go away. And that leaves plaintiffs with two options. Pursue the broker in arbitration. The broker obviously brings Piaggio in as a necessary third party, and we're all sitting together in Miami having arbitration. That's option one. Option two is they just ignore all these contract place claims and go after negligence. Well, they don't even defend their jurisdiction for the negligence claim in their brief. They just drop a footnote and say we rely on the same aspects as our contract base claims. This aircraft was designed, manufactured, assembled, et cetera. All sorts of places, none of which were Idaho. So either way, we're looking at a situation where it makes a lot of sense that we're not going to be sitting in Idaho. Whether or not they pursue these contract base claims, dismiss them just for negligence, or actually want to pursue this broker and have the broker bring us in, either way, we are not sitting in Idaho. And that's what all the parties expected for the 14 months that this lasted. So I think it's a little insincere for plaintiffs to act like they're surprised by an arbitration clause. On the other hand, it looks a lot like forum shopping that we just don't fully understand. I see that I've reached the time I'd like to save for rebuttal unless you have any further questions. You may reserve. Thank you. Thank you. Thank you. Your Honors, may it please the Court, Eric Stidham on behalf of the Peregrine Trust and Fast Enterprises. Your Honor, I want to focus on four issues, if I can, in this Court. First, we disagree with the analysis relating to pendent jurisdiction. We don't believe that it is purely a matter of discretion. The Swint case and Ninth Circuit precedent do establish that a test needs to be followed by the Court in determining whether or not to follow pendent jurisdiction. And in this case, we don't believe that the inextricably intertwined or the necessary test are satisfied here. And I do want to address that. With regard to personal jurisdiction, if the Court does want to address that, there's a fundamental distinction and difference of opinion here. Now, the trial court did go through a very thoughtful analysis with regard to personal jurisdiction. That's at 8 through 10 in the excerpt of record. And it did properly look at the contacts that Piaggio had with the requisite forum. And while that was adequate, I do want to point out that the facts in support of personal jurisdiction are actually much more robust than those that were highlighted by the district court in its opinion. And in particular, what- Tell us what those are. Sure. Those relate primarily to Piaggio's presence in Idaho in furtherance of the contract. And what I mean by that, Your Honor, and what is clearly a distinction that we think is inappropriate that is being made by Piaggio, is Piaggio wants to say that the operative contract in this dispute is Contract 1 or the CBA Piaggio contract. That is not what my client's claims are on. And we made that clear in our brief, and I think we've made that clear before. My client's claims are based on what has been called the First Amendment, the Second Amendment, and then warranties that were provided to Peregrin as the user directly by Piaggio. And when you properly look at the contract as it's framed, as it's truly framed between the parties, First Amendment and Second Amendment, what are the activities that relate to that First and Second Amendment and what jurisdictional ties do they have? What we have here is significant negotiations directly between Piaggio and the FAST employees, including the FAST in-house counsel and the contracting. And we have a physical presence of Piaggio sending its planes and its pilots for nine months into Idaho. And I do want to stress that we're talking about planes owned by Piaggio and pilots because as indicated in the Walden case, physical presence is a relevant fact, and it can also mean, as in this case, the sending of goods or personnel into Idaho. And what I mean by the more robust facts, Your Honor, is if you look at the excerpts of record, for example, at 189 through 90, excerpt of record 238, excerpt of record 160, 162, 197 through 98, 238, and 77 through 78. And I'm running through these, Your Honor, because they relate to a similar thing. They relate to interactions between Piaggio and FAST and its employees, sending what is referred to as the demonstration plane, a Piaggio replacement plane owned by Piaggio, and Piaggio's pilots into Idaho for nine months. And it is entirely relevant. The distinction that Piaggio would have us make is not genuine and likening of it to, for example, the contacts in the PICO case, which were found to not relate to the contracted issue. It sounds like your client would like us to address personal jurisdiction. I was just jumping to that in response to your question, Your Honor. But as I said at the outset, we do not believe it would be appropriate for this court to address personal jurisdiction. But it certainly is. I'm sorry. That's your argument. But if it does. But if it does. Okay. It just, it, I don't disagree with your reading of our cases, but it just seems to me that there's a, when the issue is jurisdiction, it would seem efficient, if nothing else, to decide it early. Well, Your Honor, I don't believe that that's true. And I also believe that. You don't think it's efficient? No, I do not believe it's necessarily efficient in this case. Now, I mean, we're here. We're arguing it. I'll take this case specific, but let's think about what this means as far as precedent, too. One, I don't think it's efficient here because personal jurisdiction might change. It may never become something that's appealed. Most importantly, separate from efficiency, if I could move on, Your Honor, I don't think that that's the standard that this, honestly, do not think that that's the standard that the Ninth Circuit gets to apply. No, I don't disagree with that. Could you talk about the arbitrability question with respect to Fast and Peregrine? Certainly, Your Honor. The main issue? With regard to the arbitrability issue, this case turns on, and as Judge Wendel, the trial court, properly looked at it, the clear express language of the provision that's in place. The assertion by Piaggio is that Fast is bound by this contract provision, and this contract provision expressly limits it to parties. Now, in this case, which I think is a significant distinguishing point that helps, it even strengthens my client's position, the parties entered into subsequent contracts, subsequent contracts in which they chose to expressly state that they were not modifying or expanding that arbitration provision. This is all premised on the application of Idaho law, and I'd appreciate your discussing why, in your view, Florida law should not apply. I'm aware of Picorni, but it seems very different where they, there the entire arbitration clause was held to be unconscionable and, therefore, not enforceable, and there's no such allegation here. It's just, you know, who's bound by it. It's not being alleged to be unconscionable in any way. It's just who's a party or who's bound to arbitrate, and I'd appreciate your response to why Idaho law applies. Certainly, Your Honor, and we do believe Idaho law properly applies. Let me first, if I could, address why we don't think that the Florida choice of law clause applies and should be considered. It shouldn't be considered because it's part of the same issue as the arbitration. The choice of law provision, the forum selection provision, and the arbitration provision are all exactly the same provision. It basically says the parties, defining again the same issue we're talking about with regard to arbitration, agree to arbitration, forum, and application of Florida law. So in this case, the trial court properly considered whether this provision applies, and the same analysis that you reach, which is, I think, rock-solid analysis when you're looking at the clean language of the case, is that that provision in the Charlie Bravo-Piaggio contract does not apply to FAST. Accordingly, Your Honor, you can't really, I think it would be intellectually inconsistent to leap towards the assumption, as is being asserted by Piaggio, that Florida law applies based on a provision that the Idaho court says does not apply. So they're all wrapped in the same issue, Your Honor. So I would say in this case, Florida law is not something that FAST contractually agreed to for the same reasons that FAST did not contractually agree to arbitrate. So if you take out the choice of law provision, because I just don't think that that's part of our analysis based on the statement I just made, you look to a typical choice of law analysis. Now, the trial court, when you look through it, went through an appropriate analysis with regard to jurisdictional questions and then stated in a footnote why it was going to apply Idaho law. And it referenced the fact that it had just gone through an analysis that it thought was sufficient to justify the application of Idaho law, in addition to other rules that would get there. Now, in this case, Your Honor, choice of law has not been raised before this court, we would assert. It was raised in the reply. It was touched on in the opening brief, but touched on is kind of an odd argument that that somehow was a proxy for interconnectedness. They asserted, as I understood their argument to be, that the pendant jurisdiction tests were satisfied because you had to determine whether personal jurisdiction existed before you determined choice of law. We addressed that in our brief. We don't think that, one, that's the appropriate test for pendant jurisdiction. And also, it just – it's intellectually – there's an intellectual disconnect between asserting somehow the tests are proxy for one another. What we get then is, in the reply brief, these assertions regarding Florida law and Delaware law somehow applying and reaching a different result. And those assertions are raised the first time that anybody has addressed the issue, from the trial court to us, is in the reply. And I would just note that those cases that they're asserting about, really not about whether Florida law should apply, but whether there would be – that Florida law would have a different outcome, missed the mark because they're not addressing a case like here in which the court needs to consider what the clear language of that provision means. Instead, they're asserting Florida law and, in this case, Delaware law, regarding equitable estoppel and third-party beneficiary analysis, by the way, which this court does not have. We have not had a chance to brief whether or not those apply. And I would note that there are issues under Delaware, third-party beneficiary law and equitable estoppel law, which include elements that haven't been argued here. So I'm spending a lot of time, Your Honor, and I apologize for that, saying that I think that's kind of a sideshow. And I do think that that has not been properly raised as an issue for this court, whether or not there's choice of law. Well, Piaggio has, I think, fairly steadily taken the position that Florida law applies, right? No, I disagree. They've never agreed that Idaho law applies. They have never challenged it, I would say, properly,  What Piaggio did in its brief at the trial court level was to assert that the provision applies and Florida law applies. They did not address whether Florida or Idaho law properly should apply to the first question, which is construing the contract to determine whether or not that provision is applicable to the parties. So that's the distinction I would make, Judge Tsushima. Your Honor, to get back and touch, if I could, briefly on the other two issues, unless there's more questions about arbitrability, I would just want to highlight again, to get back into this jurisdictional issue, which we don't think you should hear, but, you know, to be honest, we're being conservative, so we want to make sure that the record is clear here, because these are fundamental, I think, distinctions that are being asserted that are wrong, somehow that all these nine months of contacts in furtherance of the transaction somehow don't count. And in particular, I would just address, in addition to that string that I had read into the record, Let me ask you one question about the personal jurisdiction issue. Do you know of a case in which one party claims that the forum court lacks personal jurisdiction, right? And the forum says, okay, this is an arbitrable dispute, so I order arbitration. Now, that goes on appeal. I don't understand why personal jurisdiction isn't intertwined with the arbitration order, because a court can't order somebody which it has no jurisdiction to arbitrate, can it? Yes, no, Your Honor, they can't. But I would say that that is not the analysis this court is bound to with regard to pendant jurisdiction. There's a distinction between cases that are brought under 1291, which relates to interlocutory orders and injunctions, and 9 U.S.C. 16. And I would point the court's attention to, and it's a Third Circuit case, unless I'm mixing the Sixth and Third Circuit up, DuPont. In that DuPont case, they rightly looked at Swint and what they were allowed to do in a very similar context to this, where they were asked to be addressing personal jurisdiction and arbitrability, with the argument being just very similar to what the court raised. They said, one, no, that would be a violation and an approach upon Congress to be creating, in effect, a de facto rule that personal jurisdiction is immediately appealable. That is not what Congress said. And accordingly, the DuPont case said that outcome determinativeness of the personal jurisdiction question should not cause the court to circumvent what has been set forward in Swint. And so, Your Honor, I think that addresses the question. And to go back to the issue of the record, Excerpt of Record 223 through 225, there's a very telling document that touches on a lot of fronts relating to personal jurisdiction. It reflects that negotiations have taken place, that the contracting question relates to the duties that are created under the First and Second Amendment. And it also notes that Piaggio is sending in its people and its planes in furtherance and in performance of its contract. Thank you, Counselor. You've exceeded your time, and I think we understand your position. We'll hear again from Mr. Borer. Thank you, Your Honor. I'm going to address three points, unless you'd like to address something else. In terms of the Swint test in discretion, I respectfully disagree with the opposing counsel. I'm going to give you a couple of case sites that are post-Swint issues where this court has said fairness or efficiency warrant the exercise of pendant jurisdiction. Are these in your brief? They're in the brief or in Hendricks. I cited Hendricks as well in this case. Probably my best case for this is Hendricks. And they're cases that Hendricks relies on. The first is Level 303, F-3rd, 1039. And the actual statement by the court is that efficiency makes sense. We need to do this now so we're not wasting our own time. Forget about the parties. Let's worry about the court. And the second one is Thomas, 309, F-3rd, 1203. That talks about fairness. It's the case I mentioned earlier. The whole benefit of this arbitration clause is entirely lost even if we're right, if we have to go through all the discovery and in trial. Every other circuit that I'm aware of has also done this. The diet foods case cited in Hendricks, the merit case, which Justice Sotomayor was part of, and the Second Circuit. Circuits are using efficiency as a basis for pendant jurisdiction post-Swint. Another thing about that opposing counsel mentions DuPont, which is a 2001 case. Well, in 2002, the same court, Third Circuit, and Enri Diet Foods, which is cited with approval in Hendricks, actually went ahead and used efficiency as a basis for pendant jurisdiction. So there's just no rigid rules there. This is a discretionary test. In terms of the arbitration, you know, I think opposing counsel, and perhaps I'm guilty of it too, put the cart before the horse a little bit. What we're really talking about here isn't that term that says Florida law was chosen by the parties. What we're looking at is what law should apply to this entire case ab initio before even getting to the contract. So it's not that we're saying that . . . But before you get to the contract, it's the law of the forum state. It's the choice of law of the forum state, correct. So the choice of law of the forum state, after you go through the most significant relation test, which I agree with opposing counsel. It wasn't briefed on this. It's an issue for the district court in the first instance. But it isn't an issue to be assumed. And if they go through the most significant relation test, I have no idea how Idaho gets chosen. Perhaps Florida, perhaps Delaware. I could even maybe see Texas. What's your response to counsel's argument that this was not squarely raised in the opening brief? Well, I guess we'd address it too as one. Even if we didn't, this court has every ability . . . Well, if you didn't, our bottom line normally is that it's waived or forfeited. Right. So . . . No, that's correct. But in this particular context, there's Ninth Circuit precedent saying this court does have the right and arguably obligation to get the correct law put forth. But I don't think we waive it to begin with. We have argued Florida law throughout. But not in the opening brief here. In the opening brief, we do say that the appropriate state law needs to be figured out before we can actually meaningfully look at the arbitration issue. That's why we think the jurisdiction . . . It's the only basis the district court could have possibly had for assuming Idaho applied is the fact it's sitting in Idaho. So we think that these are inextricably intertwined because if Idaho doesn't make sense from a jurisdictional perspective, which we respectfully submit, then there's no way Idaho law would apply in any other event, including for the arbitration agreement. But we do say several times in the opening brief this appropriate state law needs to be selected before we can meaningfully get to the arbitration issue to begin with. I have very little time. Just one thing about the flight coordination that I started talking about beforehand. The Bristol-Myers case from the Supreme Court says any of these contacts to be meaningful have to be suit-related. They have to be specific to the actual case. There are no claims anywhere in their seven counts that have anything to do with flight coordination. This is, on the other hand, as Judge Tshishima said in the Pico v. Western case, these are incidental contacts at best. These were not part of the original agreement. They have just simply nothing to do with what they're moving on. If they prove that we did coordination great or terrible or didn't do it at all, it doesn't change any of their burden in terms of the actual substance of the case. Thank you, Counselor. The case just argued is submitted, and we, again, appreciate the excellent job by both counsel. The case is submitted, and we stand adjourned for this morning's session. All rise.
judges: Hawkins, Tashima, Graber